No. 92-351

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

JOE SILVA,

      Plaintiff and Appellant,

  -vs-

CITY OF COLUMBIA FALLS,

      Defendant and Respondent.

FILED

MAY 18 1993

_____ Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          John H. Bothe and Lauri Wallace; Bothe & Lauridsen,
Columbia Falls, Montana

      For Respondent:

          Katherine R. Curtis, City Attorney, Columbia Falls,
Montana

                  Submitted on Briefs:  November 12, 1992

                             Decided:  May 18, 1993

Filed:

_____
               Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Appellant Joe Silva (Silva) appeals from an order of the Eleventh Judicial District Court, Flathead County, granting summary judgment to the City of Columbia Falls, Montana (the City). We affirm.

On January 15, 1989, Silva, a Columbia Falls police officer, suffered an industrial injury to his left thigh when he was kicked by an individual he was attempting to arrest. Silva was immediately eligible for workers' compensation because the injury occurred while he was on duty, and he has received benefits under the Workers' Compensation Act since the date of his injury. It appears that in approximately March 1989, while he was still off duty due to his leg injury, he fell down some steps.

Silva began treatment for his left thigh injury on January 20, 1989, with Dr. Chet Hope, his family doctor in Columbia Falls. On March 2, 1989, Silva applied in writing for police disability retirement benefits, based on a letter from Dr. Hope stating that Silva was currently unable to return to work as a police officer. The claim was denied on March 30, 1989. According to a letter to Silva from the city attorney, benefits were denied because statements from Dr. Hope indicated that Silva's injury would not result in permanent disability or permanent impairment and because an evaluation by the Kalispell Orthopedic Clinic indicated that Silva should be able to return to work in the near future.

Silva was evaluated by an Evaluation Panel at St. Patrick Hospital in Missoula in August, 1989. No specific trauma could be

2

identified as the cause of Silva's left thigh pain. In addition, the evaluation indicated that Silva's lumbar spine problem might be related to his falling down steps and that there might be permanent partial impairment of his lumbar spine. Surgical treatment of the lumbar spine specifically was not recommended. The conclusion of the Evaluation Panel was that Silva could return to work on a gradual basis.

In September 1989, the City, through its chief of police, advised Silva that he would be scheduled to begin a gradual return to work on September 27, 1989, unless he was still on certain medication prescribed by his doctor. Dr. Hope subsequently advised the chief of police that Silva continued to require medication for inflammation and pain; Dr. Hope was uncertain how long the medication would be needed.

On March 2, 1990, Silva was examined by Dr. James H. Mahnke, a neurosurgeon, for the purpose of obtaining an opinion about back surgery. Dr. Mahnke's opinion, based on an MRI scan done in August 1989 and on his own examination, was that Silva was suffering from a back lesion that would respond only to surgery. Dr. Mahnke did not connect the lesion to the January 1989 injury at that time.

On June 6, 1990, the city attorney informed Silva that the City could no longer hold his position on the police force open. She noted the conclusion of the independent medical panel in August 1989 that he could return to work on a gradual basis and advised that the City would terminate him as a police officer unless he arranged to return to work by July 6, 1990.

On June 13, 1990, Silva renewed his request for police disability retirement benefits. In renewing the request, Silva's attorney stated "it is quite apparent that he is now precluded from returning to work as a patrolling officer . . . ." The attorney subsequently forwarded a letter from Dr. Mahnke, dated June 11, 1990, stating that Silva's back lesion was attributable to his industrial injury in January 1989 and that Silva "was disabled from working as a police officer from the time of that injury." This letter, received by the City on June 21, 1990, was the City's first medical evidence indicating that Silva was permanently disabled from performing his duties as a police officer.

The Police Commission of the City of Columbia Falls (Police Commission) considered Silva's reapplication for benefits on September 7, 1990, and determined that Silva was entitled to disability retirement benefits effective on that date. Silva disputed the Police Commission's use of September 7, 1990, as his entitlement date. The Police Commission subsequently decided that Silva was entitled to disability retirement benefits effective June 21, 1990, the date the City first received medical evidence that Silva was permanently disabled from performing his duties as a police officer.

Silva filed a complaint in District Court alleging that he was entitled to payment of disability retirement benefits retroactive to the date of his injury. He contended that the Police Commission's decision not to pay disability retirement benefits for the period between the date of his injury and June 21, 1990, was

4

arbitrary and capricious and that it violated §§ 19-10-402 and 19-10-502, MCA.

The City moved to dismiss the complaint, presented additional evidence and affidavits, and requested that its motion be converted to one for summary judgment. Silva filed a cross-motion for summary judgment.

The District Court rejected the City's argument that it had no authority to review a local government agency's decision, but granted the City's motion for summary judgment on other grounds. The court determined that applicable statutes do not provide an express time when a transfer from the active duty list to the retired list is to take effect. It concluded that the Police Commission had discretion in deciding when an officer would be transferred to the retired list and, as a result, entitled to receive disability retirement benefits. Reviewing the evidence before it, the court then concluded that the Police Commission had not acted without a reasonable basis in making Silva's disability retirement benefits effective June 21, 1990. Silva appeals.

The sole issue before us is whether the District Court erred in granting summary judgment in favor of the City.

Initially, we note the City's argument on appeal that the District Court erred in refusing to dismiss Silva's complaint for failure to state a claim on the basis that the court had no authority for judicial review of a police commission's decision regarding disability retirement benefits. We also note that the City failed to cross-appeal on this issue. Where a respondent

5

seeks review of rulings on matters separate and distinct from those sought to be reviewed by an appellant, a cross-appeal is necessary. Rouse v. Anaconda-Deer Lodge County (1991), 250 Mont. 1, 817 P.2d 690; Johnson v. Tindall (1981), 195 Mont. 165, 635 P.2d 266. Thus, we are precluded from addressing this issue on appeal.

Silva argues first that the District Court erred as a matter of law in interpreting §§ 19-10-402 and 19-10-502, MCA. Our standard in reviewing a court's conclusion of law is whether the court is correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603.

In essence, Silva argues that §§ 19-10-402 and 19-10-502, MCA, require the payment of police disability retirement benefits as of the date of the original injury or disability. Section 19-10-502, MCA, provides for both the amount and commencement of disability retirement benefits: when an officer is transferred to the retired list, "he shall thereafter receive monthly payments from the city's police retirement fund . . . ." Nothing in the statute requires payments to be made before transfer to the retired list or for any period of time prior to the transfer from the active list to the retired list.

Section 19-10-402, MCA, sets forth how the determination of transferring a police officer injured or disabled in the line of duty from the active list to the retired list--for purposes of receiving the disability retirement benefits specified in § 19-10-502, MCA--is made. The statute mandates transfer to the retired list when an officer receives duty-related injuries or disabilities

6

and the injuries are, "in the opinion of the board of police commissioners or city council of the city or town, of such character as to impair his ability to discharge his duties as an active police officer . . . ." Section 19-10-402, MCA. The statute is clear that the appropriate entity has discretion in making the determination as to whether and when the injuries or disabilities permanently impair the officer's ability to perform. A transfer to the retired list is mandatory only upon the making of such an impairment determination.

Silva concedes that neither statute expressly states when a transfer to the retired list must take effect. He argues that the statutes, read together, require benefit commencement as of the date of the onset of the injury or disability. Our discussion of the statutes makes it clear that such a conclusion is unwarranted. No express time for transfer to the retired list is contained in either § 19-10-402 or § 19-10-502, MCA; furthermore, § 19-10-402, MCA, does contain plain language vesting discretion in the police commission or city council authorized to make the impairment determination and any corresponding transfer to the retired list. To accept Silva's argument would require this Court to insert a provision into the statute which is not contained therein; it also would require us to insert a provision inconsistent with the legislative determination of when and how disability retirement benefits are to be paid. The role of this Court is to ascertain what is contained in statutes; it is not our role to insert or vary provisions of statutes adopted by the Montana legislature. See §

7

1-2-101, MCA.

Silva also suggests that statutes governing other retirement systems in Montana, particularly the Public Employees' Retirement System (PERS), buttress his statutory interpretation of §§ 19-10-402 and 19-10-502, MCA. We disagree. Like the statutes before us, the PERS authorizes a specific entity to determine whether a member has become disabled. See § 19-3-1003, MCA. Unlike the applicable statutes here, however, public employee disability retirement benefits are to commence "on the day following the member's last day of membership service." Section 19-3-1006, MCA. Thus, in the PERS, the legislature specifically provided a date certain-- related to when the member stopped working--for the commencement of benefits. Such a date certain is not contained in § 19-10-402 or § 19-10-502, MCA. Further, § 19-3-1006, MCA, makes it clear that the legislature is aware of how to provide for a result similar to that argued by Silva here. It did not adopt such a provision for local government police disability retirement benefits.

We conclude that §§ 19-10-402 and 19-10-502, MCA, do not require that police disability retirement benefits commence or be paid as of the date of the original injury or disability. As a result, we hold that the District Court did not err in its statutory interpretation.

Silva's second assertion of error relates to the District Court's failure to conclude that the Police Commission acted arbitrarily and capriciously in making his disability retirement benefits effective June 21, 1990. Silva contends that there was a

total lack of record support for the Police Commission's determination and that, as a result, the decision was arbitrary and capricious.

We note here that this case does not present itself in the usual posture of a review by this Court of a grant of summary judgment. The District Court determined that it had inherent authority to review actions of an administrative agency under the "arbitrary and capricious" standard alleged by Silva in his complaint and proceeded to review the Police Commission's determination pursuant to that standard. As discussed above, the City did not properly raise on appeal the issue of whether judicial review of the Police Commission's decision was available, thereby precluding our review. Thus, for purposes of this appeal, we assume arguendo that the District Court had authority to review the Police Commission's action pursuant to the "arbitrary and capricious" standard. Our review is confined to whether the court erred in determining that the Police Commission's action was not "without reasonable basis" and, therefore, not arbitrary or capricious.

Webster's Ninth New Collegiate Dictionary defines "arbitrary" to mean "existing or coming about seemingly at random or by chance or as a capricious and unreasonable act of will;" similarly, "capricious" is defined as "characterized by a sudden, impulsive and seemingly unmotivated notion or action." Thus, a review by a district court or this Court of an action under the "arbitrary and capricious" standard does not permit a reversal merely because the

9

record contains inconsistent evidence or evidence which might support a different result. Rather, the decision being challenged must appear to be random, unreasonable or seemingly unmotivated, based on the existing record. Like the District Court, we cannot reach such a conclusion regarding the Police Commission's determination to make Silva's disability retirement benefits effective June 21, 1990.

Silva was originally injured on the job in January, 1989. His first application for disability retirement benefits, in March 1989, was denied. Medical evidence at the time indicated that Silva would be able to return to work. In August, 1989, medical evidence indicated that Silva was able to return to work on a gradual basis at that time. The first medical statement that Silva would not be able to return to his position as a police officer was received by the City on June 21, 1990. While Dr. Mahnke also indicated in that statement that he thought Silva had been disabled from working as a police officer from the date of the injury in January 1989, that statement conflicted with the medical evidence noted above covering much of that period.

We cannot conclude, on the basis of this record, that the Police Commission's decision to make Silva's disability retirement benefits effective on the date the City received the Mahnke letter, and its refusal to make the benefits effective at any earlier time, was arbitrary and capricious. Substantial evidence exists to support the decision and, while other decisions also may have been appropriate, we cannot conclude as a matter of law that the

10

decision is random, seemingly unmotivated or unreasonable based on the record before the Police Commission, the District Court and this Court.  The District Court did not err.

AFFIRMED.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11

May 18, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


John H. Bothe and Laurie Wallace
Bothe & Lauridsen
P.O. Box 2020
Columbia Falls, MT   59912

Katherine R. Curtis, Esq.
City of Columbia Falls
P.O. Box 329
Columbia Falls, MT  59912

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
     Deputy