DA 13-0121

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 234

THE CITY OF LIVINGSTON, MONTANA,

        Petitioner and Appellant,

  v.

PARK CONSERVATION DISTRICT,

        Respondent and Appellee,

  v.

HEART K RANCH,

        Intervenor.

APPEAL FROM:     District Court of the Sixth Judicial District,
                      In and For the County of Park, Cause No. DV 2012-8
                      Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Bruce E. Becker, Livingston City Attorney, Livingston, Montana

        For Appellee:

                Donald D. MacIntyre, Attorney at Law, Helena, Montana
                Brett Linneweber, Park County Attorney, Livingston, Montana

        For Intervenor:

                Karl Knuchel, Erik Coate, Attorneys at Law, Livingston, Montana

                            Submitted on Briefs:  July 31, 2013
                                       Decided:  August 20, 2013

Filed:

            _____
                            Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 The City of Livingston appeals from the District Court's "Order Affirming Decision of PCD" [Park Conservation District], filed January 7, 2013. We affirm.

¶2 On appeal the City contends that the District Court erred in upholding the PCD's decision that a certain channel adjacent to the Yellowstone River is part of the natural watercourse of the Yellowstone River and therefore subject to the Natural Streambed and Land Preservation Act, § 75-7-101, et seq, MCA. The City contends that the PCD decision was arbitrary and capricious, characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 The disputed channel is adjacent to the Yellowstone River near Livingston, Montana, and has been used since the nineteenth century to obtain Yellowstone River water to satisfy water rights currently held by Heart K Ranch. The Yellowstone River flows into the channel when water levels are high and returns to the main channel of the River downstream. Heart K has no headgate on the River, and has to remove accumulated rocks, gravel and other materials to allow River water into the channel in times of lower flows. The City owns land adjacent to the channel and contends that Heart K's maintenance activities in the channel have harmed the City's property. The PCD has reviewed and permitted Heart K's maintenance activities in the channel as provided in the Natural Streambed and Land Preservation Act of 1975, § 75-7-101 through -125, MCA. The City contends that the channel does not fall under the Act and that the PCD therefore has no authority to permit Heart K's maintenance activities.

2

¶4     In April 2011, the City petitioned the PCD for a declaratory ruling under § 75-7-125, MCA, which provides for rulings to "determine the applicability, interpretation, or implementation of any statutory provision or any rule" adopted under the Act. The PCD accepted the petition on the narrow issue of whether the channel in question is subject to the permitting process in the Act, or whether, as the City contends, the channel is actually an irrigation ditch not subject to the Act. There is no dispute that the Yellowstone River itself is subject to the Act.

¶5     The PCD appointed Laurie Zeller, Bureau Chief of the Conservation Districts Bureau of the Montana Department of Natural Resources and Conservation as hearing officer for the declaratory ruling proceeding. The PCD, Heart K, the City, the Montana Department of Fish, Wildlife & Parks, and others submitted exhibits and information. There was a public hearing in September 2011, to receive relevant testimony, and the hearing officer conducted a site visit. The hearing officer made findings of fact and issued a recommended decision. On December 8, 2011, the PCD issued its Declaratory Ruling that the channel is a flood channel, high water channel, or side channel of the Yellowstone River, and is therefore subject to the Act.

¶6     The PCD applied the Act along with its own administrative rules and those adopted by the Department of Natural Resources and Conservation.[1] Considering the totality of the circumstances, the PCD determined that the Yellowstone River is a dynamic river system in the area of the channel and that it frequently changes channels due to scouring and deposition

3

of river materials during high water. During this process, islands of gravel deposits form and then wash away, and side channels, including the channel at issue, are overtaken by the flows and become part of the River.

¶7      The channel at issue is within this migration zone of the Yellowstone River, and water in the channel comes from the natural flow of the River. Any water not taken from the channel for irrigation returns to the main channel of the River. The PCD examined aerial photos, maps, and the actual area during a site visit, and found no evidence of spoil piles to indicate that the channel is a man-made ditch. The PCD found no evidence of a headgate to divert water into the channel, although there was a diversion wing of river rock that served to direct some Yellowstone River flow into the channel.

¶8      The PCD found that the channel is part of the Yellowstone River, and is shaped by high water flows that naturally enter the channel. During some flows gravel and debris accumulate at the opening of the channel. Heart K has removed these accumulations, subject to permits from PCD under the Act, so that Yellowstone River water will flow down the channel.

¶9      The City petitioned the District Court for judicial review of the PCD decision. The District Court upheld the PCD and the City appeals.

**STANDARD OF REVIEW**

¶10      The standard of review of a conservation district's declaratory ruling is set out in § 75-7-125(4), MCA. Under that statute, a court on judicial review may reverse or modify the

---

[1] Section 75-7-117, MCA, requires both the Department of Natural Resources and Conservation and the conservation districts to adopt rules to implement the Natural Streambed and Land Preservation

4

conservation district's declaratory ruling only if substantial rights of the appellant have been prejudiced because the decision violates constitutional or statutory provisions; is in excess of statutory authority; is affected by error of law; or is arbitrary or capricious, characterized by abuse of discretion or a clearly unwarranted exercise of discretion. A decision is arbitrary if it comes about seemingly at random or by chance or as a capricious and unreasonable act of will. It is capricious if it is the product of a sudden, impulsive and seemingly unmotivated notion or action. *Silva v. City of Columbia Falls*, 258 Mont. 329, 335, 852 P.2d 671, 675 (1993); *Keily Const. v. City of Red Lodge*, 2002 MT 241, ¶ 69, 312 Mont. 52, 57 P.3d 836. Under this standard a court may not alter a decision merely because the record contains inconsistent evidence or evidence that might support a different result. *Keily*, ¶ 69.

## DISCUSSION

¶11 The Legislature enacted the Natural Streambed and Land Preservation Act to further the goals of Article II, sec. 3 and Article IX of the Montana Constitution, and to establish the policy that Montana's "natural rivers and streams and the lands and property immediately adjacent to them" be "protected and preserved." Section 75-7-102, MCA. A person intending to engage in a "project" to alter or modify the "state of a natural, perennial-flowing stream or river, its bed, or its immediate banks" must notify the applicable local conservation district. Sections 75-7-103(5) and -111, MCA; *Bitterroot River Protection Assoc. v. Bitterroot Conservation District*, 2002 MT 66, ¶ 10, 309 Mont. 207, 45 P.3d 24 (*Bitterroot I*). The District then reviews the proposal and may deny, approve, or approve with modifications. Section 75-7-112, MCA. Heart K has used this process to obtain review and

Act.                                              5

approval of its projects to remove accumulated river materials at the upstream end of the channel, to allow water to continue to flow down the channel in times of lower flows on the Yellowstone River. Montana law recognizes that natural stream channels may be used to convey water for appropriation. Section 85-2-411, MCA; *Hidden Hollow Ranch v. Fields*, 2004 MT 153, ¶ 31, 321 Mont. 505, 92 P.3d 1185.

¶12 The provisions of the Act apply to a stream, defined as a "natural, perennial-flowing stream or river, its bed and its immediate banks." Section 75-7-103(6), MCA. Implementing rules adopted by the Department of Natural Resources and Conservation define a "stream" under the Act as "a stream which in the absence of diversion, impoundment, appropriation, or extreme drought flows continuously at all seasons of the year and during dry as well as wet years." Admin. R. M. 36.2.402(7). The corresponding rule of the PCD applies the Act to "projects on a natural perennial-flowing stream, or portions thereof, including its bed, immediate banks, and channels." PCD Rule 5(2). The PCD rules further provide that a natural waterway includes "[f]lood channels, high water channels, and side channels of natural, perennial-flowing streams . . . if water naturally enters the channels during high water or normal flow." PCD Rule 5(5)(a)(iv). The City does not contest the validity or applicability of these rules.

¶13 A conservation district, when considering whether a river or a portion of it falls under the Act, must base its decision on the "totality of the circumstances demonstrated by the factual record." *Bitterroot River Protective Assoc. v. Bitterroot Conservation District*, 2008 MT 377, ¶ 40, 346 Mont. 507, 198 P.3d 219 [*Bitterroot II*]. This determination should not be based upon "technical definitions" that "would be inconsistent with our State's legal

6

principles." *Bitterroot II*, ¶ 34. The "nature of the channel" itself is an important consideration. *Bitterroot II*, ¶ 42.

¶14 Here it is uncontested that the Yellowstone River itself is a "stream" covered by the Act. It is also clear that the channel at issue is a contiguous channel to the Yellowstone River, and that portions of the River's water naturally flow through the channel in times of higher water. Those facts make the channel part of the bed of the Yellowstone River under the DNRC rules, and make it a channel of the River under the PCD rules. This is also consistent with a declared goal of the Act, to protect and preserve "natural rivers and streams and the lands and property immediately adjacent to them." Section 75-7-102(2), MCA.

¶15 The City contends that the District Court should not have upheld the decision of the PCD because its declaratory ruling was arbitrary or capricious. The City points to various documents in the record in which the disputed channel was referred to as a "ditch," arguing that the PCD ignored this evidence. In the present case the issue is whether the channel is part of the natural channel of the Yellowstone River, or is a man-made ditch. The City has not shown that any of these references to a ditch arose in the context in which a decision-maker decided the contested issue of whether the channel was a man-made ditch or part of the natural channel of the River. The fact that water right claimants and others may have referred to a ditch or to points of diversion therefore has marginal relevance to the issue of whether this specific channel comes under the Act. The PCD was not required to defer to references to the channel as a ditch when the actual physical characteristics of the channel clearly showed that it was natural and not a man-made ditch. Moreover, there are other historic documents that refer to the channel as a channel, slough, side channel or secondary

7

channel of the Yellowstone River. Significantly, the PCD found no physical evidence on the ground that the channel had been constructed as a ditch.

¶16    It is clear that the PCD decision should not be reversed simply because there is evidence in the record that could support a different result. *Keily*, ¶ 69. The City's burden in this case is to show that the decision was "random, unreasonable, or seemingly unmotivated based on the existing record." *Silva*, 258 Mont. at 335, 852 P.2d at 675. Here the PCD relied upon numerous pieces of evidence to support its decision, including photographs, maps, historic documents and a site visit. The PCD reasonably reconciled the evidence, including references in the historic record, when considering the status of the channel under the Act. The PCD explained the situation in its decision:

> In reviewing the record, in order to come to an understanding of the totality of the circumstances, the Supervisors looked at the documents to discern how the "Channel" has been described. The Supervisors recognize that the information in the record is contradictory. Some documents refer to the "Channel" as a ditch or canal, while other documents refer to it as a natural water course, side channel, secondary channel, or slough.
>
> Also, in reviewing the record, the Supervisors recognize that the "Channel" has been used and continues to be used as a water conveyance system. Standing alone, the information regarding the use of the "Channel" as a conveyance system does not tip the scale in either direction. Whether the "Channel" is a ditch or a natural waterway, both may, as a matter of law, be used to transport irrigation water. While not determinative the findings do establish the lawful use of the "Channel" as a conveyance system.
>
> In the analysis of the totality of the circumstances, fully recognizing the use of the "Channel" as part of an irrigation conveyance system, the greater weight of the information as outlined in Findings of Fact Numbers 16 through 24, 26 and 28, support a holding that the "Channel" is a natural waterway rather than a ditch. Such a determination is well within the policy of the Act that natural rivers and their channels are to be protected and preserved to be available in their natural or existing state.

The City has failed to show that the PCD reached its decision in an arbitrary or capricious manner.

¶17    The decision of the District Court upholding the decision of the PCD is affirmed.


                                        /S/ MIKE McGRATH

We concur:

/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ LAURIE McKINNON
/S/ JIM RICE