FILED

06/16/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0416

DA 19-0416

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 155

---

DAVID E. STALOWY and JACQUELINE A. STALOWY,

       Plaintiffs and Appellants,

  v.

FLATHEAD CONSERVATION DISTRICT,

       Defendant and Appellee.

---

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-16-953A
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

              Marcel Quinn, Thomas Hollo, Hammer, Quinn & Shaw PLLC, Kalispell, Montana

       For Appellee:

              Caitlin Overland, Flathead County Deputy Attorney, Kalispell, Montana

---

              Submitted on Briefs:  March 4, 2020

                      Decided:  June 16, 2020

Filed:

                       _____
                            Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    David and Jacqueline Stalowy applied for permits with the Flathead Conservation District ("District") to conduct dredging activities on their Flathead County property. At issue is whether North Bear Creek and other waterbodies on the Stalowy property meet the definition of a "stream" subject to the regulatory provisions of The Natural Streambed and Land Preservation Act of 1975 ("Act"), Title 75, chapter 7, MCA. The District found that they did and asserted jurisdiction. The District Court affirmed, and Stalowys appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    The Stalowys' property is in the Bear Creek drainage. Bear Creek is a large stream system comprising North and South Bear Creeks, defined by a "number of small, geographically isolated wetlands" known as the Slope Wetlands Complex. The largest feature on the property is a naturally existing pond known as Beaver Lake. The District Court described the waterway as follows:

> Upstream of [the Stalowys'] property, Bear Creek flows in a perennial, defined channel. A short distance before the [Stalowys'] land, it forks, with the more surface flow laden channel splitting to the south. [The District] refers to this channel as South Bear Creek. [The Stalowys] refer to "South Bear Creek" as simply Bear Creek, and maintain the North Fork is an ephemeral offshoot. "North Bear Creek" enters Grassy Marsh, a wetland area partially on [Stalowys'] property. North Bear Creek exits Grassy Marsh and enters Upper Pond in a defined channel. During late summer and early fall, this section of North Bear Creek contains no surface flow. North Bear Creek then exits Upper Pond in a defined channel and enters either Beaver Lake or David's Pond through a series of culverts. Below David's Pond, North Bear Creek continues through multiple smaller channels that have migrated over time. North Bear Creek rendezvous[es] with South Bear Creek next to Highway 83, at the intersection with Landmark Lane.

2

¶3     Over the years, the Stalowys have conducted various dredging projects where North Bear Creek enters their property. For the District to have jurisdiction under the Act, the proposed dredging work must result in a "change in the state" of a "natural, perennial-flowing stream." Section 75-7-103(5)(a), MCA. The District initially determined in 2008 and 2009 that it did not have jurisdiction over the dredging activities around Beaver Lake because there was no perennially flowing stream, but it did grant a permit for the Stalowys to install a culvert.

¶4     In 2015, the Stalowys began an expanded dredging project of Beaver Lake and the Upper Pond, which was to be followed by additional dredging in the wetland known as Grassy Marsh. After receiving a number of complaints, the District reexamined its jurisdiction, obtaining an independent consultant to study the stream.

¶5     The District determined that the work done on the property was a "project" under the Act, thus invoking its jurisdiction, and required the Stalowys to apply for a permit for their proposed dredging of Grassy Marsh and continuing work on Beaver Lake. In making its jurisdictional determination, the District determined that the interconnected nature of the bodies of water in North Bear Creek, which includes all stream channels, ponds, wetlands, and waterbodies within the channels, comprised a natural, perennial-flowing stream to the confluence with South Bear Creek. It reasoned that although North Bear Creek shifts channels, and during dry periods flows partially in subterranean form, it remains within the definition of a perennial stream because existing stream channels containing historical surface flows were documented in the review process.

¶6    The Stalowys filed a petition for a declaratory ruling regarding the District's jurisdictional determination under the Act's declaratory ruling process. The District determined the issue to be of significant public interest and appointed a hearing officer to assist with the process and to make recommended findings of fact and conclusions of law. After a public hearing on the issue, the District issued its Declaratory Ruling maintaining its assertion of jurisdiction over the Stalowys' property and projects. The Stalowys petitioned the District Court for judicial review of the Declaratory Ruling.

¶7    The District Court affirmed the District's Declaratory Ruling. It found evidence in the record that North Bear Creek: (1) historically maintained surface flows; (2) is part of a hydrologically connected landscape; and (3) contains multiple existing stream channels that are susceptible to human influence; and that downstream flows have been impacted by the Stalowy project. It found further that evidence in the record supported the District's position that human activities caused North Bear Creek to dry during summer months. Thus, under these limited circumstances, groundwater flowing through North Bear Creek's historical channel supported a finding of jurisdiction, and the District was neither operating under an error of law nor arbitrary and capricious in its decision-making. Further, the court concluded that the record contained evidence that the Stalowys' dewatering of Beaver Lake and subsequent filling of David's Pond modified the historical flow of Bear Creek and resulted in discharges of sediment downstream. Thus, the District's conclusion that the Stalowys' work was a project subjecting it to jurisdiction under the Act was substantially supported by the record and was not arbitrary and capricious or affected by error of law.

4

**STANDARDS OF REVIEW**

¶8　Under the Act, a conservation district's declaratory ruling regarding its jurisdiction is subject to judicial review. Section 75-7-125(4), MCA. The proceeding is not a contested case proceeding under the Montana Administrative Procedure Act ("MAPA"). Section 75-7-125(3), MCA. A court may reverse or modify the District supervisors' declaratory ruling only if substantial rights of the appellant have been prejudiced because the ruling is: (1) arbitrary and capricious; (2) characterized by an abuse of discretion; (3) an error of law; or (4) in violation of constitutional or statutory provisions. Section 75-7-125(4)(a)-(d), MCA. This Court applies the same standard of review when reviewing a district court's decision to affirm the agency decision. *Bitterroot River Protective Ass'n v. Bitterroot Conservation Dist.*, 2008 MT 377, ¶ 18, 346 Mont. 507, 198 P.3d 219 (citation omitted).

¶9　Under these standards, the courts' "inquiry must be searching and careful, but the ultimate standard of review is a narrow one." *Clark Fork Coalition v. Mont. Dep't of Envtl. Quality*, 2008 MT 407, ¶ 27, 347 Mont. 197, 197 P.3d 482. "The courts do not substitute their judgment for that of the agency by determining whether its decision was correct. Rather, the courts examine the decision to determine if it was made on sufficient information, or whether the decision was so at odds with the information gathered that it could be characterized as arbitrary or the product of caprice." *Clark Fork Coalition*, ¶ 27. A court cannot reverse a conservation district's decision merely "because the record contains inconsistent evidence or evidence which might support a different result." *Kiely Constr. L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 69,

312 Mont. 52, 57 P.3d 836 (citation omitted). To find an agency decision was arbitrary and capricious, the party asserting error bears the burden to demonstrate that the District's decision was "random, unreasonable, or seemingly unmotivated based on the record." *City of Livingston v. Park Conservation Dist.*, 2013 MT 234, ¶ 16, 371 Mont. 303, 307 P.3d 317 (quoting *Silva v. City of Columbia Falls*, 258 Mont. 329, 335, 852 P.2d 671, 675 (1993)).

¶10 When reviewing conclusions of law, this Court determines whether the agency's interpretation of the law is correct. *Bitterroot River Protective Ass'n*, ¶ 18.

## DISCUSSION

¶11 The Legislature enacted the Natural Streambed and Land Preservation Act to further the objectives of Article II, sec. 3 and Article IX of the Montana Constitution and to establish the policy that "Montana's natural rivers and streams and the lands and property immediately adjacent to them" be "protected and preserved." *City of Livingston*, ¶ 11 (citing § 75-7-102, MCA). Any person planning a physical alteration or modification of a stream must notify the applicable local conservation district, which then reviews the proposal and may deny, approve, or approve with modifications. *Bitterroot River Protective Ass'n*, ¶ 28; §§ 75-7-103(5), -111, and -112, MCA.

¶12 The provisions of the Act apply to a stream, defined as a "natural, perennial-flowing stream or river, its bed, and its immediate banks[.]" Section 75-7-103(6), MCA. The phrase "natural, perennial-flowing stream" is not defined. The Act gives the supervisors of a conservation district jurisdiction to "determine the applicability, interpretation, or

6

implementation of any statutory provision or any rule . . . under [the Act]."
Section 75-7-125(1)(a), MCA.

¶13 The Stalowys assert that the District erred when it concluded that the Act conferred it jurisdiction over their property and the projects on North Bear Creek. They assert that the District: (1) improperly considered evidence based on layperson testimony; (2) did not consider relevant factors its rules required it to; (3) improperly determined it had jurisdiction contrary to the evidence; and (4) erred as a matter of law when it concluded that it had jurisdiction over subsurface flows. They assert that the District Court erred in upholding the District's Declaratory Ruling asserting jurisdiction over the waterbodies on their property.

### Evidence Based on Layperson Testimony

¶14 The Stalowys first assert that the District's Declaratory Ruling is affected by error of law because it depends extensively on "unqualified opinions" of laypersons and thus violates the Stalowys' due process rights. The Stalowys assert that a decision-making body may not rely on expert opinions offered by laypersons.[1] They assert that the District disregarded expert opinions in favor of "inadmissible" statements from laypersons with no technical expertise.

---

[1] In support of their position, the Stalowys cite to *Bean v. Mont. Bd. of Labor Appeals*, 1998 MT 222, 290 Mont. 496, 965 P.2d 256, and *In re Renewal of the Teaching Cert. of Thompson*, 270 Mont. 419, 893 P.2d 301 (1995). Neither case is relevant to the issues on appeal because the Act's jurisdictional determination and declaratory ruling process are expressly not contested case proceedings under MAPA. Section 75-7-125(3), MCA. *Bean* involved judicial review of a BOLA contested case agency action, and *Thompson* involved evidence admissibility under MAPA.

7

¶15 The Act, though, specifically permits the District to consider such evidence. Section 75-7-125(2)(b), MCA, states that the District "shall provide a reasonable opportunity for interested persons and the petitioner to submit data, information, or arguments, orally or in written form, prior to making a ruling." The Act's declaratory ruling process directs a conservation district to consider this information, and the District appropriately relied on information and testimony provided by lay witnesses in this proceeding. The plain language of this statute does not require expert witnesses with technical expertise, and the District did not construe the witnesses' statements as expert opinion testimony. The District did not err as a matter of law by considering this information.

### "Factors" for Jurisdictional Determination

¶16 The Stalowys next assert that the District erred as a matter of law and was arbitrary and capricious when it did not consider "factors" its own rules required it to use to determine jurisdiction. Specifically, they point out that District Rule 6 contains ten factors the District must use, per District Rule 7, when making a jurisdictional determination.[2] The Stalowys misinterpret the District rules.

¶17 District Rule 5 directs that the "district will make determinations on the applicability of these rules, the Act, and the streams covered under the Act." Rule 5.5 details the requirements for a stream to be covered under the Act, and Rule 5.6 discusses the types of information the District will use to make its determinations. The information includes

---

[2] The Stalowys refer to District Rule 5.6 as "Rule 6" and District Rule 5.7 as "Rule 7." District Rules 6 and 7 discuss aquatic and riparian attributes and necessary forms.

8

USGS quadrangle maps; Water Resource Surveys; water rights records; landowner and resident interviews; hydrologic reports; historical information; aerial photos; stream flow data; or "any other relevant information." District Rule 5.6. The Stalowys assert that this list of information sources prescribes "factors" on which the District must make specific findings, and that each factor is an element to weigh when making the jurisdictional determination. This is an incorrect interpretation of the District's rules. The rules are clear that the types of information outlined in Rule 5.6 are examples of what the District will use in making its determination. The District used these exact types of information here when making its determination. The District did not err as a matter of law when it did not make explicit findings regarding each category of information presented.

¶18 The Stalowys contend that even if the District did consider the factors, the evidence presented overwhelmingly demonstrated that the waterbodies on the Stalowy property were not perennial streams, and the District's decision to the contrary was arbitrary and capricious. They assert that the District based its determination on little, if any, legitimate evidence despite an "overwhelming mound" of conflicting evidence.

¶19 In support of this argument, the Stalowys repeat their contention that the District acted arbitrarily and capriciously because it relied on "illegitimate" or "impermissible" layperson evidence. The Stalowys' challenge to the sufficiency of the evidence follows the MAPA "clearly erroneous" factual standard, which does not apply here. The Act's standard of review does not include MAPA's "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record" standard.

*Compare* § 2-4-704, MCA (MAPA standard of review), *with* § 75-7-125(4), MCA (the Act's standard of review).

¶20 Regardless, the District thoughtfully considered the evidence in the record—including conflicting hydrological reports, on-site evaluations, historical information, aerial photos, streamflow data, and landowner information and testimony. It was not the District Court's role, nor is it ours, to reweigh the evidence. *City of Livingston*, ¶ 10. The District Court did not err when it held that the District was not arbitrary and capricious. The record supports the conclusion that the District was not unreasonable and random in its decision-making, and its decision was not a product of a sudden, impulsive action. *City of Livingston*, ¶ 10.

**Perennial Surface Flow**

¶21 The Stalowys next assert that the District erred as a matter of law when it found jurisdiction over North Bear Creek because the District could not have jurisdiction over subsurface flow. They assert that the Act grants jurisdiction over a "perennial-flowing stream," and that cannot include subsurface flow.

¶22 District rules describe what constitutes a "stream" covered under the Act. Specifically, Rule 5 states:

> [I]n order for a stream to be covered under the act it must be a natural water way [and] . . . [c]ontain continuous natural flows[;] water feeding a natural channel *from any ground water* source, tributary, springs, or other natural source, may be considered part of the natural flow.

(Emphasis added.) The Stalowys insist that although the Rule states that water feeding a channel from a groundwater source may be considered part of the natural flow, it is

10

considered part of the flow only once it is in the surface water of the stream. This hyper-technical definition is what we discouraged in *Bitterroot River Protective Ass'n* and *City of Livingston.* When determining whether a stream falls under the Act, a conservation district should not base its determination upon "technical definitions" that "would be inconsistent with our State's legal principles." *City of Livingston*, ¶ 13 (citing *Bitterroot River Protective Ass'n*, ¶ 34). In *Bitterroot River Protective Ass'n*, we held that imposing highly technical definitions of what constituted a "natural state" of a stream—to exclude streams with *any* human influence—would be "inconsistent with our State's legal principles" and the Act's policy to protect Montana's waters. *Bitterroot River Protective Ass'n*, ¶¶ 34, 37. Based on the specific circumstances in this matter, we reject the Stalowys' similarly restrictive construction.

¶23 Here, the District determined that the subsurface nature of parts of North Bear Creek was due to manmade diversions and alterations resulting in the loss of perennial surface flow. It also noted that the stream is part of a continually changing stream system of interconnected waterbodies, considering the "totality of the circumstances." *See Bitterroot River Protective Ass'n*, ¶ 42 ("While the stream's flow is obviously critical, the nature of the channel is nonetheless a relevant consideration."). The District Court concluded that the Stalowys' suggestion that the District did not have jurisdiction over subsurface flow when the evidence established that the flow was part of a natural, perennial flowing stream was an unreasonably narrow construction of the Act given the Act's intent. We agree. Given the impact of historic human manipulation of North Bear Creek, the

11

District did not err by considering the subsurface flow when making its jurisdictional determination.

¶24 The Stalowys next assert that there was no evidence to support the District's finding that the stream meanders, migrates, or goes subsurface, and the District was arbitrary and capricious in making such a determination. They argue that the Act does not apply to streams with intermittent flow unless the intermittency is "due to man-made causes, or extreme drought," and there was no evidence of these intermittent causes. Admin. R. M. 36.2.407.

¶25 The District concluded that North Bear Creek is a channel of Bear Creek, a natural and perennial-flowing stream where "water follows the easiest path through the Slope Wetland Complex." It determined that North Bear Creek historically exhibited natural, continuous flow through its channels and blamed its current surface flow intermittency on recent human diversion and appropriation. In essence, the District determined that although North Bear Creek shifts channels and flows partially in subterranean form during dry periods, it remains within the definition of a perennial stream because the existing stream channels containing historical surface flows were documented in the review process.

¶26 Evidence in the record supports the District's finding that the entire creek was hydrologically connected. The District considered a study by Dr. Linda Vance of the University of Montana, conducted on behalf of Trout Unlimited, Ducks Unlimited, and the National Wildlife Federation regarding jurisdictional determinations in Montana. Her report determined that slope wetland complexes, like the one found on the Stalowy

12

property, "are hydrologically connected, although it may not appear so on the surface." The report concluded that the specific geographical area surrounding the Stalowy property is "part of a complex of interconnected wetlands . . . even if surface hydrological connections are not apparent."

¶27 The District further observed that hydrologic and scientific analyses in the record described past, present, and future impacts from modification of the historic channel, including: (1) a decrease in surface water retention due to removal of impermeable clay layers; and (2) increases in runoff due to native vegetation clearing. There was evidence that the dewatering of Beaver Lake and filling of David's Pond modified the historical flow of Bear Creek, resulting in sedimentary discharges downstream. Surrounding landowner testimony confirmed this, describing decades of North Bear Creek surface flow both above and below the Stalowy property and project area and sedimentary discharges following the Stalowys' manipulation of the Beaver Lake area.

¶28 The District addressed the Stalowys' conflicting evidence in detail but ultimately found that the information before it supported a determination that human activities in the drainage impacted surface flow and the "greater impact to the flow in the stream results from [the Stalowys'] development activities which commenced in 2007 from the Grassy Marsh area through the confluence with South Basin Creek. [The Stalowys] have done extensive work in the project area that has altered the stream pattern and flow."

¶29 The District made its jurisdictional determinations with full consideration of the policy underlying the Act—that streams are to be protected and preserved to be available in their natural or existing state. Section 75-7-102(2), MCA. Evidence supported the

13

District's position that human activities have caused North Bear Creek to run dry during summer months. Thus, under these limited factual circumstances, groundwater flowing through North Bear Creek's historical channel supported a finding of jurisdiction. The record does not support a conclusion that the District was arbitrary and capricious in its determination.

¶30 The Stalowys further assert that the District erred as a matter of law because it concluded that it had jurisdiction over "each and every" waterbody within their property. They assert that the Act governs only perennial streams and rivers and does not include ponds, lakes, marshes, or wetlands.

¶31 If an action results in a change of a stream within the District's jurisdiction, it is considered a "project," and the District has jurisdiction over those projects. *City of Livingston*, ¶ 11. A "project" is a "physical alteration or modification that results in a change in the state of a natural, perennial-flowing stream or river, its bed, or its immediate banks." Section 75-7-103(5)(a), MCA. The District determined that the interconnected nature of the waterbodies on the Stalowy property, including surface and subsurface flows, when viewed under the totality of the circumstances, comprised a natural, perennial-flowing stream that a project could impact. It had evidence that the Stalowys' work was impacting the stream. Thus, the District concluded the work done on the Stalowys' property was a project, subject to its jurisdiction. Based on our review of the record, the District had sufficient evidence to reach its jurisdictional conclusion and did not act arbitrarily or capriciously.

## CONCLUSION

¶32    The District Court did not err when it upheld the District's Declaratory Ruling asserting jurisdiction over the Stalowys' project.  Its decision is affirmed.


/S/ BETH BAKER


We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE